IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 16-189 |
| | ) | Judge Nora Barry Fischer |
| ZAAMAR STEVENSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I.  INTRODUCTION

This Court issued a Memorandum Order on April 22, 2020 denying Defendant Zaamar Stevenson's ("Stevenson") motion for temporary release from custody. (Docket No. 243). A few weeks later, the Court issued Tentative Findings and Rulings and an Order denying Stevenson's separately filed motion to dismiss the § 851 Information in this case, overruling his objections to the statutory sentencing enhancement raising the mandatory minimum penalty to 10 years' incarceration and his designation as a career offender resulting in a guidelines range of 292-365 months' incarceration. (Docket No. 247). Presently before the Court are Stevenson's motion for reconsideration, his supplement to same, and the Government's response in opposition. (Docket Nos. 248; 250; 253). After careful consideration of the parties' positions and for the following reasons, Stevenson's motion [248] is denied.

II.  LEGAL STANDARD

The Court initially turns to the governing legal standard. The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Kabacinski v. Bostrom Seating, Inc.*, 98 F. App'x 78, 81 (3d Cir. 2004) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)); *United States v. Kalb*, 891 F.3d 455, 467

(3d Cir. 2018). Because "federal courts have a strong interest in the finality of judgments," *United States v. Hoey*, Cr. No. 09-200, 2011 WL 748152, at *2 (W.D. Pa. Feb. 15, 2011) (citation omitted), the standard that must be met to prevail on a motion for reconsideration is high, *see Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004).

The Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *United States v. Banks*, Crim No. 03-245, 2008 WL 5429620, at *1 (W.D. Pa. Dec. 31, 2008) (citing *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Motions for reconsideration are not a tool to re-litigate and reargue issues which have already been considered and disposed of by the Court, *see Hoey*, 2011 WL 748152, at *2 (citation omitted), to express disagreement with the Court's rulings, *see United States v. Perminter*, Cr. No. 10-204, 2012 WL 642530, at *7 (W.D. Pa. Feb. 28, 2012), or for addressing arguments that a party should have raised earlier, *see United States v. Dupree*, 617 F.3d 724, 732-33 (3d Cir. 2010) (quotations omitted); *Kalb*, 891 F.3d at 467. Rather, such a motion is appropriate only where the court misunderstood a party or where there has been a significant change in law or facts since the Court originally ruled on that issue. *Hoey*, 2011 WL 748152, at *2. At least at the District Court level, motions for reconsideration should be sparingly granted. *See Cole's Wexford Hotel, Inc. v. UPMC and Highmark, Inc.*, 2017 WL 432947, *2 (W.D. Pa. Feb. 2, 2017).

III. DISCUSSION

In this Court's estimation, Stevenson has failed to meet his heavy burden to demonstrate that the Court should reconsider its decision to deny his request for temporary release. *See Dupree*, 617 F.3d at 732-33. To this end, he has not cited any changes in the controlling law requiring

exceptional circumstances under § 3145(c) to warrant temporary release or the availability of any new evidence which is material to the Court's initial denial of his motion.  (*See* Docket No. 248). Instead, he cites to irrelevant factual discrepancies, misconstrues the Court's rationale, and while he does present new information concerning his detention at the NEOCC, the same is insufficient to persuade the Court to depart from its prior ruling that his temporary release is not appropriate under § 3145(c).  (*See* Docket No. 243).  The Court briefly addresses Defendant's arguments, in turn.

First, Defendant maintains that the Court erred in relying on the PIR's statement that he was residing with his current girlfriend at the time he committed the offenses at issue in this matter. As no objections were initially lodged to the PIR, the Court did not err in relying upon such uncontested information.  *See* Fed. R. Crim. P. 32(a)(3) ("At sentencing, the court: (A) may accept any undisputed portion of the presentence report as a finding of fact.").  While the Court will consider his objection and amend ¶ 50 of the PIR to reflect such change, the same does not undermine the Court's conclusions that Defendant is dangerous and a flight risk, neither of which are mitigated by his girlfriend's willingness to serve as a third party custodian or the imposition of conditions of electronic monitoring and home confinement.   (Docket No. 243 at 8).  As other courts have recognized, "COVID-19 has no bearing on whether Defendant is a flight risk or a danger to the community." *United States v. Gage*, --- F.3d ----, 2020 WL 2771741, at *2 (N.D. Oh. May 27, 2020) (denying motion for temporary release filed by inmate at NEOCC).

Second, Defendant posits that the Court erred by allegedly downplaying the severity of his asthma condition and relying upon a New York Times article which he believes is contrary to CDC guidelines.  (Docket No. 248).  To the contrary, the Court cited the medical records provided by the defense and noted that he was diagnosed with moderate persistent asthma and also suffered a

respiratory illness earlier this year but recovered after receiving treatment for same.  (Docket No. 243 at 9-10).  Defendant has not pointed to any medical record specifically stating that his asthma condition should be classified as "severe," but counsel supports such a diagnosis based on his own review of Defendant's low peak flow readings during his respiratory illness.  (*See* Docket No. 248 at ¶ 10).   With respect to the New York Times article, the Court quoted a decision by another member of the Bench stating "[t]he Court takes note of (but of course does not rely upon) a recent article" concerning asthma and COVID-19.  (Docket No. 243 at 10 (quoting *United States v. Shelton*, Crim. No. 17-260, Docket No. 292 at 5 (W.D. Pa. Apr. 21, 2020) *which cited* April 16, 2020 New York Times article by Danny Hakim, "Asthma Is Absent Among Top COVID Risk Factors, Early Data Shows," *available at:* https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html (last visited 4/21/20).).  Simply put, the Court did not err in its assessment of Defendant's asthma condition relying upon a diagnosis by medical professionals and expressly stated that it did not rely upon the article in question.  Thus, reconsideration is not justified on these bases.

Third, Defendant argues that the Court should reevaluate its decision because additional NEOCC contractors have tested positive for the coronavirus, he was alerted by a May 17, 2020 letter from the Warden that he was possibly exposed to one of these contractors, and the inmates in the facility, including him, have been placed in quarantine in their cells.  (Docket No. 248).  However, Defendant has not tested positive for COVID-19 and, as of this writing, the Ohio Department of Rehabilitation and Correction continues to report that no inmates at NEOCC have tested positive for COVID-19.  *See Ohio Dept. of Rehabilitation & Correction; COVID-19 Inmate Testing, available at:* https://coronavirus.ohio.gov/static/reports/DRCCOVID-19Information.pdf (last visited 6/11/2020); *see also Gage*, 2020 WL 2771741, at *4 (noting same as of May 27, 2020).

Indeed, the Warden's decision to place inmates in quarantine was undoubtedly made to reduce the spread of the virus and, as another Court commented, "NEOCC's procedures may be effective in preventing the spread of the virus considering no prisoners have tested positive, despite the fact that […] staff persons have contracted the virus." *Gage*, 2020 WL 2771741, at *5. Defendant also states that his medication was removed from his cell for some time a few weeks ago but such allegations do not constitute exceptional circumstances under § 3145. *See United States v. Porter*, Crim. No. 18-68, 2020 WL 1061512, at *3 (W.D. Pa. Mar. 5, 2020) (when considering a motion under § 3145(c), "exceptional requires something out of the ordinary to distinguish the defendant's case from those of [other defendants] subject to mandatory detention.").

All told, the Court holds that Defendant has not met his heavy burden to justify reconsidering the Memorandum Order denying his motion for temporary release and reaffirms its prior decision that he has not shown exceptional circumstances warranting release under § 3145(c).

IV.   CONCLUSION

Based on the foregoing, Stevenson's motion for reconsideration [248] is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: June 11, 2020.

cc/ecf:   All counsel of record

Zaamar Stevenson c/o Joseph Charlton, Esquire